# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Jeffery D. Slocum,<br><br>Plaintiff<br><br>v.<br><br>Glenn Flower, et al.,<br><br>Defendants | Case No.: 2:16-cv-02169-JAD-CWH<br><br>**Order granting defendants' motions to dismiss and closing case**<br><br>[ECF Nos. 23, 35] |

Incarcerated pro se plaintiff Jeffery D. Slocum sues several Southern Desert Correctional Center (SDCC) guards under 42 U.S.C. § 1983. Slocum alleges multiple violations of the Eighth Amendment stemming from the guards' refusal to promptly clean up fecal water that pooled in his cell from an overflowed toilet and their delay in responding to his calls for help after he slipped in the water and injured his back. The two named defendants, Fowler and Thompson, move to dismiss Slocum's three remaining claims.[1] Because these claims fail to either establish Eighth Amendment violations or demonstrate that the asserted right was clearly established, I grant the motions, dismiss Slocum's complaint with prejudice, and close this case.

## Background

On April 19, 2016, at around 8 a.m., inmates flooded the top tier of Slocum's unit at SDCC, causing feces-filled water to flow into and pool in his cell.[2] Correctional officers walked through the unit several times, including at least twice at 11 a.m. and 1 p.m. for inmate counts, but merely laughed about the standing water. When Slocum later asked Thompson to clean up

---

[1] I find these motions suitable for disposition without oral argument. LR 78-1.
[2] ECF No. 1-1 at 4.

the water, Thompson laughed, replied "that will never happen," and walked away.³ At no point did the defendants or anyone else address the pooled water or provide Slocum cleaning supplies.⁴

Around 2:30 p.m. that day, Slocum slipped and fell on his wet cell floor.⁵ He felt severe burning in his lower back and, unable to get up, remained lying in the contaminated water. Slocum was able to reach the emergency call button in his cell eventually, but no one came to check on him. Slocum yelled for help, which prompted three neighboring inmates to also press their call buttons. Still, there was no response.⁶

After an hour, correctional officers found Slocum on his cell floor during their 3:30 p.m. count and called for assistance.⁷ While medical staff were assisting Slocum, several unnamed officers laughed at his predicament, and one stomped his boot in the water in order to splash Slocum. After being taken to a hospital, Slocum obtained a CT scan that revealed that he had suffered spinal contusions. He spent the next nine days in a wheelchair.⁸

Slocum filed this prisoner civil-rights action under 42 USC § 1983. After initial screening, he was left with three Eighth Amendment claims.⁹ The first two assert failure-to-protect and conditions-of-confinement violations against Fowler, Thompson, and three doe defendants; the third is a deliberate-indifference-to-serious-medical-needs claim against

---

³ *Id*.
⁴ *Id*. at 4–5.
⁵ *Id*. at 5.
⁶ *Id*.
⁷ *Id*.
⁸ *Id*.
⁹ In the initial screening, I dismissed a fourth, duplicative claim and all claims against SDCC's Warden and the State of Nevada. *See* ECF No. 4.

Thompson and the doe defendants.[10]  Fowler and Thompson now move to dismiss all three claims, arguing that the claims fail to state Eighth Amendment violations and that qualified immunity applies.[11]

**Legal standard**

Federal Rule of Civil Procedure 8 requires every complaint to contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief . . . ."[12]  While Rule 8 does not require detailed factual allegations, a properly pled claim must contain enough facts to "state a claim to relief that is plausible on its face."[13]  This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; the facts alleged must raise the claim "above the speculative level."[14]  In other words, a complaint must make direct or inferential allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[15]

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss.  First, the court must accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption

---

[10] ECF No. 1-1 (complaint), 4 (screening order). Although I ordered that Slocum could proceed against those doe defendants once he learned their identities and properly substituted them in, ECF No. 4 at 11–12, he never did.  Slocum successfully moved to amend his complaint to identify one of them, ECF Nos. 42, 48, but he never filed that authorized complaint. *See* ECF No. 56 at 7 (recounting history of amendment issue).  This leaves him with three Eighth Amendment claims against two named defendants: Fowler and Thompson.

[11] *See* ECF No. 23 (Fowler motion in which Thompson joins, *see* ECF No. 32); ECF No. 35 (Thompson motion).

[12] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[13] *Twombly*, 550 U.S. at 570.

[14] *Iqbal*, 556 U.S. at 678.

[15] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)).

3

of truth.[16]  Mere recitals of a claim's elements, supported only by conclusory statements, are insufficient.[17]  Second, the court must consider whether the well-pled factual allegations state a plausible claim for relief.[18]  A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[19]  A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[20]

**Discussion**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'"[21]  "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference."[22]  A prison official is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[23]  "Deliberate indifference entails something more than mere negligence but is satisfied by something less than

---

[16] *Iqbal*, 556 U.S. at 678–79.
[17] *Id.*
[18] *Id.* at 679.
[19] *Id.*
[20] *Twombly*, 550 U.S. at 570.
[21] *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).
[22] *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).
[23] *Id.* at 837.

4

acts or omissions for the very purpose of causing harm or with knowledge that harm will result."[24]

In his three claims, Slocum asserts that the defendants' actions—and mostly inaction—during the flooding incident resulted in three types of deprivations: a failure to protect him from harm, a failure to provide adequate conditions of confinement, and a failure to address his serious medical needs. I address each claim in turn.[25]

**I.     Slocum's failure-to-protect claim against Fowler & Thompson alleges, at most, negligence, and thus fails to state an Eighth Amendment violation.**

The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of inmates.[26] To establish a violation of this duty, the prisoner must show that a prison official was deliberately indifferent to serious threats to the inmate's safety.[27] Slocum alleges that Fowler and Thompson were aware of the water pooling in his cell and were deliberately indifferent to his risk of slipping and harming himself.[28]

But "federal courts . . . have frequently rejected constitutional claims arising from slip and fall accidents."[29] As the Fifth Circuit has explained, "[t]he usual reasoning is that the

---

[24] *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) (brackets and ellipses omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).

[25] Slocum briefly argues that the motions to dismiss are premature, but he cites to my previous order explaining that summary judgment was premature because several defendants had not been served and this case was in its infancy. ECF No. 21. Motions to dismiss are intended for the initial stage of litigation and are the correct vehicle for challenging the legal sufficiency of a plaintiff's claims. They may also be used to raise a qualified-immunity defense.

[26] *Farmer*, 511 U.S. at 832.

[27] *Id*. at 834.

[28] ECF No. 1-1 at 6 ("As a result of the named defendants['] failure to act on their knowledge, plaintiff was placed in a dangerous slip and fall hazard and received serious . . . [physical injuries].").

[29] *Coleman v. Sweetin*, 745 F.3d 756, 764 (5th Cir. 2014) (citing cases).

5

existence of slippery conditions in any populous environment represents at most ordinary negligence rather than a condition so threatening as to implicate constitutional standards."[30] Nothing about Slocum's claim persuades me to deviate from this rationale. Although he emphasizes in reply that the water he slipped in was contaminated with feces, this lack of sanitary conditions does not address whether the defendants acted with deliberate indifference to his risk of *falling* and comprises a separate claim that I will take up momentarily. Because Slocum's allegations depict Fowler and Thompson as, at most, acting negligently, I find that he has failed to state a failure-to-protect claim under the Eighth Amendment.

**II.  The conditions-of-confinement claim against Fowler & Thompson doesn't allege unsanitary conditions so severe or prolonged as to implicate the Eighth Amendment.**

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.[31] Although conditions of confinement may, consistent with the Constitution, be restrictive and harsh,[32] prison officials have a duty to provide prisoners with adequate shelter, food, and sanitation.[33] Accordingly, "subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment."[34]

Slocum's second claim is premised on the presence of fecal water in his cell for more than six hours. Although exposure to human excrement is undoubtedly unsanitary, courts in

---

[30] *Id.*; *see also Oubichon v. Carey*, No. 2:06-CV-2749-JAM-EFB, 2017 WL 2162940, at *8 (E.D. Cal. May 17, 2017) (stating in a prison toilet-overflow case that the "plaintiff's slip and fall amounts to 'mere negligence,' which is insufficient to establish deliberate indifference").

[31] *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *Farmer*, 511 U.S. at 832.

[32] *Rhodes*, 452 U.S. at 347.

[33] *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

[34] *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995).

similar cases have examined the duration of exposure to determine whether a prisoner's living conditions violated the Eighth Amendment. For instance, in *Smith v. Copeland*, the Eighth Circuit concluded that an inmate's exposure to "raw sewage" for four days from a flooded toilet in his isolation cell did "not rise to a level of constitutional significance."[35] The court explained that "[c]onditions . . . that may be tolerable for a few days are intolerably cruel for weeks or months," and "[t]hus, not every overflowed toilet in a prison amounts to a constitutional violation."[36]

"However, 'the length of time a prisoner must endure an unsanitary cell is simply one factor in the constitutional calculus'; equally important is 'the degree of filth endured.'"[37] In *McBride v. Deer*, the Tenth Circuit began from the premise that a "filthy cell[] may be 'tolerable for a few days,'"[38] but it ultimately held that a plaintiff sufficiently pled an Eighth Amendment violation based on living in "a feces-covered cell . . . for three days."[39] Naturally, the more extreme and reprehensible the conditions of confinement, the less tolerant courts will be of prison officials' delay in remedying the situation. For example, the District Court for the Southern District of Ohio in *Krutko v. Franklin County* denied the defendant-guards qualified immunity because they waited twenty-five minutes to release an inmate from his cell after he

---

[35] *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).

[36] *Id.* at 268–69; *see also Whitnack v. Douglas County*, 16 F.3d 954, 956, 958 (8th Cir. 1994) (finding no Eighth Amendment violation where a prisoner was not given adequate cleaning supplies for more than a day after being placed in a cell where the "toilet was covered with dried feces on both the inside and outside, the sink was covered with hair and vomit, the floor was covered with garbage and rotting food, and the walls were covered with dried human mucus").

[37] *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (quoting *Whitnack*, 16 F.3d at 958).

[38] *Id.* (quoting *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978)).

[39] *Id.*

became "covered head-to-toe in excrement" from an overflowing toilet.[40] The court described the guards' tolerance of these conditions as "the very definition of 'deliberate indifference.'"[41]

By contrast, Slocum's allegations portray unquestionably unpleasant conditions, but not those sufficiently severe or prolonged to state a claim under the Eighth Amendment. Although no human being should be subjected to fecal water for any length of time, the six hours of pooled water that Slocum alleges is far less exposure than what courts have found intolerable. Nor does Slocum allege that the water was so densely filled with feces that he or his cell became coated in excrement, even once he slipped and fell in the water. Similarly, Slocum, unlike the plaintiff in *Krutko*, does not allege that the defendants denied him the opportunity to clean himself once he was discovered in his cell. I therefore find that Slocum has failed to sufficiently allege a conditions-of-confinement claim.

### III. Thompson is entitled to qualified immunity on the serious-medical-needs claim because Slocum has failed to show a clearly established right.

A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate.[42] To establish the objective prong of such a claim, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."[43] To satisfy the deliberate-indifference prong, the plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b)

---

[40] *Krutko v. Franklin County*, No. 2:11-CV-610, 2014 WL 6687143, at *1 (S.D. Ohio Nov. 26, 2014).

[41] *Id.* at 9.

[42] *Farmer*, 511 U.S. at 828.

[43] *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quotation marks omitted).

8

harm caused by the indifference."[44]  "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."[45]

Slocum's final claim is grounded in the allegation that Thompson did not respond to the emergency call buttons that Slocum and other inmates pressed after Slocum slipped and fell. Slocum explains that these buttons trigger a loud beeping noise in the unit's control bubble, which at least one guard must man at all times.[46]  Slocum alleges that the guards routinely muffle the noise (because they find it annoying) but that, on the day of the incident, Thompson was aware that Slocum pressed his button and nonetheless ignored him.[47]

This allegation lacks factual foundation.  Although Slocum names Thompson in this claim, he has not alleged that Thompson was posted in his unit at the time of his fall and, more importantly, that Thompson was in the bubble or any location where he could hear the beeping noise or Slocum's subsequent yells for help.  But because this claim suffers from a more critical defect, I am willing to assume these facts for the purpose of these motions.

Thompson also argues that, even if he was aware of the call button being pressed, there is no allegation that he was aware that Slocum had injured himself.  He contends that a failure to respond to an emergency call button, without more, does not constitute a constitutional violation and is, at most, negligence.  Thompson has cited no authority to support this conclusion, but my own survey of Eighth Amendment jurisprudence reveals that the very few courts that have addressed similar circumstances are split on this issue.

---

[44] *Id*.

[45] *Id*. (quotation marks omitted).

[46] ECF No. 1-1 at 8.

[47] *Id*.

9

In *Velez v. Johnson*, the Seventh Circuit addressed a claim by an inmate attacked by his cellmate after the defendant-guard failed to check on the inmate when he pressed his emergency call button.[48] Like Thompson, the defendant guard argued that "he had no specific awareness" that the plaintiff was in danger.[49] The Seventh Circuit squarely rejected this contention: "[the plaintiff] pushed an 'emergency call button,' a clear indication that an emergency was at hand."[50] Accepting the defendant's position, the court explained, "would essentially reward guards who put their heads in the sand by making them immune from suit—the less a guard knows the better."[51] Conversely, at least two district courts have rejected—albeit without substantial analysis—the conclusion that a guard's failure to respond to an emergency call button, without more, amounts to deliberate indifference.[52]

However, I need not decide whether Slocum's allegations, if taken as true, sufficiently state an Eighth Amendment violation because Thompson also raises a qualified-immunity defense. Under this doctrine, "[p]ublic officials are immune from suit . . . unless they have

---

[48] *Velez v. Johnson*, 395 F.3d 732, 735 (7th Cir. 2005).

[49] *Id.* at 736.

[50] *Id.*

[51] *Id.*; *see also Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 681 (7th Cir. 2012) (addressing a case where inmates "mule-kicked" their doors to alert guards that the decedent-inmate was ill and disagreeing with the argument that, "simply because the inmates did not somehow expressly signal that there was a medical emergency, the guards were not placed on notice that an inmate was in medical distress").

[52] *Gorton v. Miller*, No. CIV-07-0284-F, 2008 WL 2790216, at *6 (W.D. Okla. July 17, 2008) ("Plaintiff also claims that he fell in his cell and that it took prison officials more than an hour to respond to the panic button. Plaintiff alleges no facts to demonstrate any serious injury as a result of this fall nor does he demonstrate how prison officials acted with deliberate indifference by failing to respond more quickly"), *aff'd*, 320 F. App'x 876 (10th Cir. 2009); *Robinson v. Moran*, No. 06-CV-3058, 2008 WL 628708, at *17 (C.D. Ill. Mar. 5, 2008) ("The Court finds that the failure to respond to the activation of a cell call button, without more, does not constitute such an obvious violation of an inmate's constitutional rights that Reynolds should have been on notice that such action constituted deliberate indifference.").

'violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'"[53] The dispositive inquiry for finding a right "clearly established" is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[54] "To be clearly established, a right must be sufficiently clear that *every* reasonable official would have understood that *what he is doing* violates that right."[55] It is not necessary for a plaintiff to cite "a case directly on point, [but] existing precedent must have placed the constitutional question beyond debate."[56] As the Ninth Circuit re-emphasized in *Hamby v. Hammond*, the right at issue must not be defined "at too high a level of generality," such as "the right not to be treated with deliberate indifference to a serious medical need . . . ."[57]

Slocum has not responded to Thompson's qualified-immunity argument and has thus not attempted to define what clearly established right Thompson violated. Because Slocum "bears the burden of showing that the right at issue was clearly established,"[58] this deficiency alone warrants granting Thompson's motion. However, based on my review of the emergency call button cases addressed above, I conclude that, even if Thompson's failure to check on Slocum violated the Eighth Amendment, that right was not clearly established.

The most helpful case for Slocum is *Velez*, but even there, the Seventh Circuit did not rely solely on the fact that the defendant pressed his call button. The plaintiff had requested a

---

[53] *City & County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (quoting *Plumhoff v. Rickard*, 572 U.S. 765 (2014)).

[54] *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

[55] *Hamby v. Hammond*, 821 F.3d 1085, 1090 (9th Cir. 2016) (quoting *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015)).

[56] *Id*. (ellipses omitted) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 740 (2011)).

[57] *Id*. at 1091, 1094 (quotation marks omitted).

[58] *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011).

transfer to a different cell prior to the attack by his cellmate, whose bizarre conduct made him uncomfortable.[59] Most importantly, after the plaintiff pressed his call button, the defendant-guard initially responded to him over the intercom system, and the plaintiff—attempting to not set off his cellmate, simply informed the guard that he was "not getting along" with his cellmate.[60] So, the guard never went to personally check on the plaintiff, who was viciously attacked that night.[61] Thus, the constitutional violation in *Velez* stemmed from the guard having some knowledge—beyond the plaintiff pressing the emergency call button—that the inmate was possibly in danger. *Velez* therefore doesn't clearly establish an inmate's right to have a guard immediately check on him any time he presses his call button.

Here, Slocum alleges only that Thompson was aware of the pooled water in his cell and that Slocum and other inmates had pressed their emergency buttons. Thompson thus had no additional reason to conclude that Slocum was injured or in danger. Although it may have been prudent for Thompson to have immediately responded to the calls, I cannot conclude that his failure to do so violated a clearly established right under the Eighth Amendment. I therefore find that Thompson is entitled to qualified immunity from Slocum's third claim, so I grant Thompson's motion to dismiss this claim.

**IV.     I dismiss Slocum's complaint in its entirety with prejudice**.

Because I also concluded above that Slocum's first two claims against Fowler and Thompson fail to establish that either guard violated the Eighth Amendment, I find that granting

---

[59] *Velez*, 395 F.3d at 734.
[60] *Id*.
[61] *Id*.

Slocum leave to amend his complaint would be futile.[62]  I therefore dismiss all three remaining claims against Fowler and Thompson with prejudice.  I also dismiss with prejudice these same three claims against the doe defendants, who Slocum has still failed to name and serve.  Because he does not allege that these three unnamed guards committed misconduct beyond what he alleged against Fowler or Thompson, eventually amending the complaint to name them would also be futile.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that Fowler's motion to dismiss **[ECF No. 23], in which Thompson has joined [ECF No. 32], is GRANTED.**

IT IS FURTHER ORDERED that Thompson's motion to dismiss **[ECF No. 35] is GRANTED.**

IT IS FURTHER ORDERED that **this case is DISMISSED in its entirety WITH PREJUDICE.**  The Clerk of Court is directed to enter judgment accordingly and **CLOSE THIS CASE.**

Dated: September 27, 2018

_____
U.S. District Judge Jennifer A. Dorsey

---

[62] *See Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (stating that leave to amend "is properly denied . . . if amendment would be futile").